1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10   PAULINE SPENCER,

11              Plaintiff,                    No. CIV S-08-0047 EFB

12       vs.

13   MICHAEL J. ASTRUE,
     Commissioner of Social Security,
14
                Defendant.                    <u>ORDER</u>
15   _____/

16          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

17   ("Commissioner") denying her application for Supplemental Security Income ("SSI") under

18   Title XVI of the Social Security Act ("Act").  For the reasons discussed below, the court grants

19   plaintiff's motion for summary judgment, denies the Commissioner's cross-motion for summary

20   judgment, and remands this case for further consideration.

21   <u>BACKGROUND</u>

22          Plaintiff, born April 17, 1951, applied for supplemental security income on October 22,

23   2204.  Administrative Record ("AR") 54–64.  Plaintiff alleged that she became unable to work

24   on June 1, 2002, due to "lumbar stenosis, gout, copd [chronic obstructive pulmonary disease],

25   arthritis."  AR 54, 58.

26   ////

1

At the November 29, 2006 hearing before administrative law judge ("ALJ") Mark C. Ramsey, plaintiff testified that she was 55 years of age and lived with her boyfriend and teenage daughter. AR 284-285, 288. Plaintiff testified that she completed high school, was a stay-at-home mom (her children were born in 1974, 1978, and 1991), and that her only work experience was providing in-home care to her father beginning 2001 until his death in 2002. AR 285-288.

Plaintiff testified that she has constant back pain that sometimes includes spasms bringing her pain level to an 8 (on an ascending scale of 0-10). AR 294. The pain and spasms are getting worse. AR 299-300. She testified that she experiences "real bad" lower back spasms, that can go around to her "front area," and that her calves hurt when she walks. AR 293. Plaintiff testified that she also has pain in her neck (pain scale of 5 to 6), shoulders, hips "real bad," and legs. AR 295-296. She also has pain in her shoulders, arms, hands and wrists, but does not know the cause. AR 296-297.

Plaintiff testified that she does some chores at home, including changing her sheets, light housework, vacuuming about once a week, preparing light meals four to five days a week, and grocery shopping twice a month for about 45 minutes to an hour. On a typical day, plaintiff will "[d]o light housework, watch a little T.V., [listen to] radio or read." AR 291. Plaintiff's boyfriend or nephew take her grocery shopping and carry the groceries. Plaintiff's daughter helps with the laundry, does the mopping and cleans the bathroom. Plaintiff's boyfriend or nephew mows the lawn. AR 288-291, 293.

Plaintiff testified that she can sit for about half an hour before she needs to get up; can stand for 30 to 45 minutes before she needs to move; can walk for about 45 minutes at a time; and that she lies down a lot, "all the time" and "all day." AR 297-298.

Plaintiff takes Vicodin three times a day, and Baclofen (an antispasmodic) two to three times a day, to diminish and control her pain. AR 291-292, 294. Other treatment includes using a hot patch on the back of her neck and a TENS unit on her back and hip (two to three times a day, for one to two hours). AR 295.

Plaintiff testified that she is also depressed, withdrawn and paranoid, and has had anxiety or panic attacks, the most recent seven or eight months before the hearing.  AR 298.  Plaintiff takes Triavil to treat her depression and anxiety, and Ambien for sleep.  AR 299.  She quit taking Zoloft because she didn't find it helpful.  *Id.*

Plaintiff takes Allopurinol to control her gout.  AR 296.  However, she still has symptoms of pain in her feet and ankles once or twice a month.  AR 296-297.

At the hearing, plaintiff's attorney objected to the March 2005 consultative report of internist Jed L. Freeman, M.D., who found plaintiff's physical examination to be within normal limits but did not quantify plaintiff's limitations (AR 171-178).  AR 283, 300-309, 134-135.  The ALJ agreed to arrange for plaintiff to be seen by another consultative examiner, AR 304-309, 313, ultimately selecting orthopedic surgeon Dr. Philip Wirganowicz, M.D., AR 266-272.

The ALJ called a medical expert, Dr. Sidney Walters (specialty not provided) to testify. AR 281, 283, 310-313.  Dr. Walters testified that plaintiff's symptoms did not meet the criteria for depression, largely because she had sought no therapy and stopped taking Zoloft; that plaintiff "did meet, at one time, the diagnosis for anxiety/panic attacks after the death of multiple family members within a short period of time, but was never treated for that."  AR 310.  As a result, opined Dr. Walters, neither condition qualifies as a severe mental disorder.  With respect to plaintiff's mental residual functional capacity, Dr. Walters found that plaintiff's "limitations are in detailed instructions and carrying them out and understanding them (INAUDIBLE) moderate impairment.  And work pressures would also be a moderate impairment.  Otherwise, there are no other limitations mentally."  AR 310-311.  In response to questioning by the ALJ, Dr. Walters clarified that plaintiff can perform simple, unskilled work, and can perform detailed, complex work but with moderate limitations.  AR 311.  In response to questioning by plaintiff's counsel, Dr. Walters further clarified that plaintiff has moderate limitations (estimated at "about 15 to 25 percent of the time") in three areas:  understanding and carrying out complex instructions, maintaining attention and concentration due to depressive symptoms, and

responding to work pressures in a usual work setting.  AR 312.  Thus, opined Dr. Walters, "I would not recommend assembly like activities," and "try to avoid heavy assembly type of work." AR 312, 313.

The ALJ issued a decision on July 25, 2007, finding that plaintiff is not disabled.[1]  AR . 12-17.  The ALJ made the following findings:

1.    The claimant has not engaged in substantial gainful activity since October 22, 2004.

2.    The medical evidence establishes that the claimant has spinal stenosis and depression, but she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

////

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.*  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq.*  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828, n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Bowen*, 482 U.S. at 146, n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

3.      The claimant's subjective complaints are not fully credible and not supported by the evidence of record.

4.      The claimant has the residual functional capacity to perform the basic mental demands of unskilled, medium work.  There are no other limitations (20 CFR 416.945).

5.      The claimant does not have past relevant work.

6.      The claimant is 55 years old, which is defined as advanced age.

7.      The claimant has a 12th grade education (20 CFR 404.964).

8.      Given the claimant's limitations, the issue of transferable skills is not material (20 CFR 416.968).

9.      Section 404.1569 of Regulations No. 4, and Rule 203.15, Appendix 2, Subpart P, Regulations No. 4, and Social Security Ruling 85-15, direct a conclusion that, considering the claimant's residual functional capacity, age, education, and work experience, she is not disabled.

10.     The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision.

AR 16-17.

On November 8, 2007, the Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.  AR 5-7.

ISSUES PRESENTED

Plaintiff alleges that the ALJ erred in:  (1) rejecting the opinion of plaintiff's treating physician regarding plaintiff's residual functional capacity; (2) discrediting plaintiff's testimony; and (3) utilizing the Medical Vocational Guidelines without securing the testimony of a vocational expert.

LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied.  *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*,

1    180 F.3d 1094, 1097 (9th Cir. 1999).

2    The findings of the Commissioner as to any fact, if supported by substantial evidence,

3    are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

4    more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521

5    (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to

6    support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol.*

7    *Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

8    "The ALJ is responsible for determining credibility, resolving conflicts in medical

9    testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

10   2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

11   interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

12   *Thomas v. Barnhart*, 278  F.3d 947, 954 (9th Cir. 2002).

13   <u>MEDICAL EVIDENCE</u>

14       A.  <u>TREATMENT HISTORY</u>

15   Plaintiff's treatment records (set forth at AR 136-170, 207-220, 239-249) set forth the

16   following test results: (1) Laboratory reports in 2003, 2004 and 2005 reflecting gout, for which

17   plaintiff was prescribed Allpurinol (*see, e.g.,* AR 208, 213, 220); and (2) July 2004 CT scan of

18   plaintiff's cervical spine reflecting the following diagnostic impression (AR 211):

19       1.    There appears to be mild central stenosis at C5-6 and there may be mild
20             central stenosis at C6-7, as described above.  The findings are due to
              posterior spondylitic spurring and ridging.

21       2.    There are changes of degenerative disc disease at C4-5 and C5-6, as
              described above.  The central canal and the disc space at C6-7 and C7 -T1
22            are obscured by beam hardening artifact.  They can be further evaluated
              with an MRI of the cervical spine.
23
         3.    There are areas of neural foraminal narrowing within the cervical spine, as
24             described above.

25   Treatment notes from 2003 to 2006, mostly by plaintiff's primary treating physician, Dr.

26   Harold Budhram, in addition to some emergency treatment notes, reflect plaintiff's complaints of

1   pain in her heels, ankles, knees, hips, elbows, shoulders, lumbar back and neck, with additional

2   complaints of panic attacks, depression, decreased sleep, energy and appetite.  Medical findings

3   include joint swelling and pain on range of motion, increased lumbar pain when lifting, standing

4   and bending, arm numbness and shaking, depression, anxiety and insomnia.  Medical diagnoses

5   include gout, COPD, degenerative joint disease, cervical degenerative disc disease, stenosis,

6   cervical stenosis, sciatica, lumbar spasm with limited movement, changes in lordosis (spine

7   curvature), upper extremity radiculopathy, bilateral arm paresthesias, and acute bilateral feet

8   paresthesias.  Prescriptions include Vicodin, Celebrex, Neurontin, Baclofen, Zoloft and Triavil.

9            On June 22, 2005, Dr. Budhram completed a Lumbar/Cervical Spine Residual Functional

10  Capacity Questionnaire.  AR 221-227.  He stated that he had treated plaintiff since January 1993

11  (22 years).  AR 222.  He diagnosed:  "1) cervical stenosis, spurring & DDD [degenerative disc

12  disease], 2) COPD, 3) hiatal hernia, 4) DDD L/S [lumbar/sacral]," based on objective evidence

13  of "CT & plain films," and plaintiff's symptoms of "back, neck pain; arm leg weakness pain;

14  lifting and gait problems with pain; fatigue; ocass. dizziness."  AR 222.  Dr. Budhram stated that

15  plaintiff "often" experiences pain, described as "severe burning pain neck low back pain, arms,

16  legs; prolonged sitting or riding in car [increases] pain 8/10 [scale]."  AR 223.  He noted

17  significantly decreased range of motion in plaintiff's neck, and low back pain, muscle spasm and

18  tenderness.  *Id.*  Dr. Budhram noted that plaintiff's medications cause her side effects of

19  "decreased concentration, drowsiness, fatigue."  AR 224.  Dr. Budhram opined that, in an eight-

20  hour day, plaintiff can sit for a total of one hour (20 minutes continuously), stand for a total of

21  one hour (20 minutes continuously), and walk for a total of 45 minutes (20 minutes

22  continuously).  AR 224.  He opined that, in a competitive work situation, plaintiff can rarely lift

23  10 or more pounds, only occasionally twist, stoop, crouch, climb ladders or stairs, and that she

24  can use her hands, fingers and arms, respectively, one-third of the time in an eight-hour

25  workday.  AR 226.  Dr. Budhram opined that plaintiff needs to walk for 5 minutes every 10

26  minutes, lie down every 45 minutes, and would, in a regular workday, require unscheduled 20

minute breaks approximately every two hours.  AR 225, 227.  He opined that plaintiff would

likely be absent from work an average of three days per month due to her impairments or

treatments.  AR 227.  Finally, Dr. Budhram opined that emotional problems did not contribute to

the severity of plaintiff's physical symptoms and limitations.  AR 223.

B. <u>CONSULTATIVE EXAMINATIONS</u>

<u>Jed L. Freeman, M.D. (Internist)</u>

In his March 2005 consultative report, Dr. Freeman found plaintiff's physical and

neurological examinations to be within normal limits, with the exception of disparate grip

strength readings ("50/40/35 pounds on the right, and 30/20/20 pounds on the left").  AR 173,

171-178.  Dr. Freeman made the following diagnosis:  1) Chronic neck pain, due to degenerative

disc disease; 2) Gout;  3) Lumbar stenosis; and  4) Tobacco use.  AR 176.  Dr. Freeman made the

following functional assessment:

> There are no limitations to returning to employment at the skill level she had
> previously attained.  She would benefit from a routine, daily exercise program,
> dietary modifications with weight loss and a quit smoking strategy, as well as
> physical conditioning and stretching exercises.

AR 176.

<u>Joanne M. Roux, M.D. (Psychiatrist)</u>

In her March 2005 consultative report, Dr. Roux noted that plaintiff "walks with a stiff,

slow and rigid gait, and periodically has to switch change [sic] positions in the chair – both of

which appear to be secondary to physical discomfort."  AR 183.  Dr. Roux found plaintiff "easy

to establish rapport with . . . . She puts forth what appears to be a good effort in all of the

questions and tasks asked of her, and comes across as being genuine and truthful." *Id.*  Dr. Roux

made the following diagnosis pursuant to the American Psychiatric Association's multiaxial

////

////

////

framework:[2]

| | | |
|---|---|---|
| Axis I: | 1. Major depressive disorder, recurrent, current episode mild to moderate. | |
| | 2. Panic disorder, with agoraphobia. | |
| Axis II: | Diagnosis deferred - although the claimant may have some dependent and/or avoidant personality features. | |
| Axis III: | Various medical problems as noted under "past medical history" (by claimant report); otherwise deferred to appropriate medical specialist. | |
| Axis IV: | Psychosocial stressors over the past year: Chronic pain, fatigue, and other physical problems; fixed income; still grieving loss of father, brother, and nephew; single parent. | |
| Axis V: | 55 GAF | |

AR 185.

Dr. Roux noted:

The claimant's reported history, reviewed records, and observed mental status findings are consistent with the above noted diagnoses. She does not appear to be exaggerating or malingering any psychiatric symptoms at this time. Despite being on two psychotropic medications [Triavil and Zoloft], she continues to have a fair number of depression and anxiety symptoms, which – especially in combination with her physical pain, fatigue, and associated problems – would likely have at least some negative impact upon her ability to obtain or maintain gainful employment at this time. However, the claimant herself feels that the primary reasons she is "unable to work" is because of her neck and back

---

[2]  The American Psychiatric Association's Multiaxial Assessment is set forth in the Diagnostic and Statistical Manual of Psychiatric Disorders, ("DSM-IV") (4th Ed. 1994), at pp. 27-37:

| | |
|---|---|
| Axis I: | Clinical Disorders |
| | Other Conditions That May Be a Focus of Clinical Attention |
| Axis II: | Personality Disorders |
| | Mental Retardation |
| Axis III: | Medical Conditions |
| Axis IV: | Psychosocial and Environmental Problems |
| Axis V: | Global Assessment of Functioning ("GAF"). |

The Global Assessment of Functioning ("GAF") scale accords an assessment of a patient's "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Id., at 32. A GAF 55 (51 to 60) denotes "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers)." Id. at p. 34.

1    problems.

2    AR 186.

3        Dr. Roux opined that even if plaintiff received appropriate treatment for her mental

4    conditions, "as long as she continues to experience significant pain and associated physical

5    problems, a robust improvement would not be expected."  *Id.*  Dr. Roux's assessment of the

6    impact of plaintiff's symptoms on her ability to work was as follows:

7        1.    Able to understand, remember, and carry out simple one or two-step job
              instructions.

8

9        2.    Able to do detailed and complex instructions.

10       3.    Mildly impaired in her ability to relate to and interact with supervisors,
              coworkers, and the public.

11       4.    Mildly impaired in her ability to maintain concentration and attention,
              persistence and pace.

12

13       5.    Mildly impaired in her ability to deal with day-to-day work activity,
              including attendance and safety.

14       6.    Mildly impaired in her ability to adapt to the stresses common to a normal
              work environment.

15

16       7.    Mildly impaired in her ability to maintain regular attendance in the work
              place and perform work activities on a consistent basis.

17       8.    Able to perform work activities without special or additional supervision.

18   AR 186-187.

19       Philip Wirganowicz, M.D. (Orthopedic Surgeon)

20       Pursuant to his February 2007 consultative examination of plaintiff, Dr. Wirganowicz

21   concluded that plaintiff can perform, without limitation, the full range of medium exertional

22   work (lift and carry 25 pounds frequently, 50 pounds occasionally; sit, stand or walk for 6 hours

23   in an 8-hour workday with normal breaks).  AR 266-272.  Measurements were consistent left and

24   right, with the exception of grip strength (20/15/20 right, 15/15/15 left).  AR 268.  All range of

25   motion maneuvers (neck, back, extremities) were found to be within normal limits.  AR 268-269.

26   ////

Although Dr. Wirganowicz found "tenderness to midline palpation about the mid thoracic and lumbosacral areas," he found "all joints . . . are of normal temperature with no swelling or joint effusions.  AR 268, 269.  However, he found "[o]n motor strength testing, there is weakness in all extremities associated with giving away.   Motor strength in all extremities is 4/5."  AR 269.

Because this examination was conducted after the administrative hearing, plaintiff's counsel submitted interrogatories to Dr. Wirganowicz, whose answers and report were then challenged in a letter by counsel to the administrative law judge.  AR 124, 274-276, 278-280.  Counsel emphasized Dr. Wirganowicz's responses indicating that he had examined 25 patients the day of plaintiff's exam, spent 20 minutes with plaintiff, spent 15 minutes reviewing her records and dictating his report, and did not review the June 22, 2005 report of plaintiff's treating physician, Dr. Budhram.  Of the objective findings he had made in support of plaintiff's complaints, Dr. Wirganowicz commented that the reported tenderness in plaintiff's thoracic and lumbosacral areas "is a subjective finding," while the "'give away' weakness" suggested lack of effort.  AR 275.

C.  STATE AGENCY REVIEWS

In March 2005, State Agency physician Donald R. Walk completed a Psychiatric Review Technique Form.  AR 191-204.  He found that plaintiff has nonsevere affective and anxiety-related disorders, noting that "Pt. has a history of depression worsened by grief and onset of panic . . . Some new veg. sx [symptoms] noted but coping fairly well."  AR 191, 203.  He opined that plaintiff's symptoms of depression included sleep disturbance, decreased energy, feelings of guilt and worthlessness, and difficulty concentrating or thinking.  AR 197.  He further opined that plaintiff's anxiety-related symptoms caused her "[r]ecurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average of at least once a week."  AR 198.  Dr. Walk concluded that plaintiff has "mild" restrictions of activities of daily living, "mild" difficulties in maintaining social functioning, and "mild" difficulties in maintaining concentration, persistence or pace; he

11

made no opinion as to episodes of decompensation.  AR 201.

In April 2005, State Agency physician Dr. C. Eskander identified plaintiff's history of gout, neck pain associated with mild stenosis at C5-6 and C6-7, lower back pain and COPD, but opined that plaintiff had no limitations precluding her return to her past work.  AR 231-238.  Dr. Eskander found that plaintiff could occasionally lift and carry up to 50 pounds, frequently lift and carry up to 25 pounds, that she could stand and/or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday, an unlimited capacity to push and/or pull, and no postural, manipulative or visual limitations .  AR 232-234.  This assessment was affirmed in August 2005 by Dr. Sudhir Jaituni, and by State Agency psychiatrist H.N. Hurwtiz, M.D.  AR 230, 238.

In November 2006, State Agency psychologist Sidney Walter, Ph.D., completed a Psychiatric Review Technique Form.  AR 250-265.  Dr. Walter found that plaintiff's depression and panic attacks were nonsevere impairments, her anxiety-related problems commencing after the death of three family members (father, brother, nephew).  AR 250, 255, 262.  Dr. Walter found that plaintiff has "no" restrictions of activities of daily living, "no" to "mild" difficulties in maintaining social functioning, and "moderate" to "marked" difficulties in maintaining concentration, persistence or pace; he opined that plaintiff had experienced no episodes of decompensation.  AR 260.  Dr. Walter further found that plaintiff has "no" limitations in understanding, remembering and carrying out short, simple instructions; "slight to moderate" restrictions in understanding, remembering and carrying out detailed instructions; and "slight" restrictions in the ability to make judgments on simple work-related decisions.  AR 264.  Dr. Walter also found that plaintiff has "moderate" limitations in her ability to respond appropriately to work pressures in a usual work setting, and "slight" limitations in her ability to interact appropriately with co-workers, supervisors and the public, and to respond appropriately to changes in a routine work setting.  AR 265.

////

DISCUSSION

The court is compelled to state the obvious.  As the administrative law judge recognized at the hearing, AR 304, because plaintiff is of "advanced age" and limited to unskilled work, application of the Medical Vocational Guidelines ("grids") dictates a finding of "not disabled" only if plaintiff can perform the full range of work in the medium exertional level or greater.  *See* 20 C.F.R. Pt. 404, Subpt. P, Appx. 2, Rule 203.14.  A finding that plaintiff is limited to light or sedentary work would dictate a finding of "disabled."  *See id.*, Rules 201.01, 202.01.  Further, had the ALJ accepted plaintiff's allegation that she has significant nonexertional limitations,[3] he would have been precluded from relying on the grids and required to rely on the testimony of a vocational expert.  However, the ALJ had no vocational expert testimony upon which to rely, having called only a medical expert to testify.  Thus, the ALJ either had to apply the grids in this dubious context or convene a supplemental hearing to obtain the testimony of a vocational expert.  His decision, rendered eight months after the hearing, must be considered against this backdrop.

Plaintiff first contends that the ALJ improperly rejected the opinion of her treating physician, Dr. Harold Budhram, regarding plaintiff's physical residual functional capacity.  The ALJ did not reference Dr. Budhram by name but found in pertinent part:

> In June 2005, a physician submitted a statement indicating that the claimant's ability to perform the demands of work is extremely limited (Exhibit 8F).  However, the record, including office notes from this physician, do not contain any objective findings which support his opinion.  Moreover, it appears that this assessment is speculative, and is primarily based on the claimant's subjective complaints.  Therefore, the Administrative Law Judge rejects this opinion.

AR 13.

////

---

[3]  Nonexertional limitations are non-strength related limitations. These include mental, sensory, postural, manipulative, and environmental limitations. *Desrosiers v. Sec'y of Health & Human Services*, 846 F.2d 573, 579 (9th Cir.1988); 20 C.F.R., Pt. 404, Subpt. P, Appx. 2, § 200.00(e).

1    The ALJ further found that the treatment notes of Dr. Budhram, again without naming

2  him, "lack[ed] objective evidence which supports the severity of [plaintiff's] allegations," "do

3  not contain any serious objective clinical findings," "do not contain any objective findings or the

4  results of diagnostic testing which reflect that the claimant is seriously limited," and were

5  "consistent" with the findings of Dr. Wirganowicz, upon which the ALJ relied.  AR 13-14.

6    "[T]he opinion of a physician who has treated the patient for an extended period of time

7  is usually entitled to greater weight than a physician who has only examined the patient for SSA

8  purposes, because the treating physician is employed to cure, and also has a greater opportunity

9  to know and observe the patient over the course of time.  *Rodriguez v. Bowen*, 876 F.2d 759, 761

10  (9th Cir.1989)."  *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1038 (9th Cir. 2003); *see*

11  *also Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir.1996) ("Because treating physicians are

12  employed to cure and thus have a greater opportunity to know and observe the patient as an

13  individual, their opinions are given greater weight than the opinions of other physicians.").

14  Nonetheless, if a treating professional's opinion is contradicted by an examining professional's

15  opinion which is supported by different independent clinical findings, the Commissioner may

16  resolve the conflict by relying on the latter.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.

17  1995).  However, a contradicted opinion of either a treating or examining professional may be

18  rejected only for "specific and legitimate" reasons supported by substantial evidence.  *Lester v.*

19  *Chater*, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough

20  summary of the facts and conflicting clinical evidence, states his interpretation of the evidence,

21  and makes a finding.  *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir.1989).  Absent

22  specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or

23  examining professional.  *Lester*, 81 F.3d at 830-31.

24    The ALJ failed to provide sufficiently specific and legitimate reasons supported by

25  substantial evidence of record for rejecting the opinion of Dr. Budhram.  Despite the ALJ's

26  statements to the contrary, Dr. Budhram's treatment notes not only acknowledge the CT

14

evidence of cervical stenosis, but set forth clinical findings on examination that are internally

consistent.  *See, e.g.,* AR 209 (lumbar spasm, stiff rotation, negative neurological findings), AR

244 (lumbar spasm, joint swelling, decreased lordosis, positive/negative leg raises), AR 245

(lumbar spasm, joint swelling, decreased lordosis, stiff rotation,  negative neurological findings),

AR 247 (decreased range of motion of large joints).  Dr. Budhram prescribed medications

consistent with his findings and with plaintiff's subjective complaints, which he clearly found

credible.  In contrast, Dr. Wirganowicz found no limitations except tenderness (which he later

discounted as subjective), and reduced grip and give-away strength (which he later discounted as

volitional).  Dr. Wirganowicz made his assessment based on a 20-minute examination, in

contrast to plaintiff's 22-year treatment relationship with Dr. Budhram.  This stark contrast

required, at a minimum, that the ALJ acknowledge Dr. Budhram's long-term relationship with

plaintiff and accord some deference to his findings, rather than discounting his overall

assessment as a "statement" by "a physician."  The consistency of plaintiff's complaints over

time, and the consistent efforts of Dr. Budhram to meet plaintiff's medical needs, are far more

probative and persuasive than the one-time assessment of Dr. Wirganowicz based on findings

that are so "standard" as to be inherently dubious.  That the State Agency physicians relied upon

Dr. Wirganowicz's assessment is not dispositive.  While "[t]he opinions of non-treating or

non-examining physicians may also serve as substantial evidence when the opinions are

consistent with independent clinical findings or other evidence in the record," the ALJ should

not "accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately

supported by clinical findings."  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)

(citations omitted).

The question of plaintiff's credibility, which the ALJ discounted, and plaintiff challenges

in her second contention are related to the ALJ's decision to rely on the opinion of Dr.

Wirganowicz rather than that of Dr. Budhram.  The ALJ discredited Dr. Budhram's residual

functional capacity opinion largely because, in the ALJ's view, Dr. Budhram's medical findings

1  and opinions were "based on the claimant's subjective complaints," in contrast to the

2  "comprehensive orthopedic evaluation" of Dr. Wirganowicz.  AR 13, 14.  In short, the ALJ did

3  not believe plaintiff and therefore did not credit Dr. Budhram.

4        "In evaluating the credibility of a claimant's testimony regarding subjective [complaints],

5  an ALJ must engage in a two-step analysis.  First, the ALJ must determine whether the claimant

6  has presented objective medical evidence of an underlying impairment which could reasonably

7  be expected to produce the pain or other symptoms alleged.  The claimant is not required to

8  show that her impairment could reasonably be expected to cause the severity of the symptom she

9  has alleged; she need only show that it could reasonably have caused some degree of the

10  symptom.  If the claimant meets the first test and there is no evidence of malingering, the ALJ

11  can only reject the claimant's testimony about the severity of the symptoms if she gives specific,

12  clear and convincing reasons for the rejection."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.

13  2009) (citations and internal quotations omitted); see also Social Security Ruling ("SSR") 96-7p

14  ("Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of

15  an Individual's Statements").[4]

16

17      [4]  Social Security Regulation ("SSR") 96-7p sets forth specific considerations to be made
    by the administrative law judge:

18

19  In recognition of the fact that an individual's symptoms can sometimes suggest a
greater level of severity of impairment than can be shown by the objective
medical evidence alone, 20 C.F.R. §§ 404.1529(c) . . . describe[s] the kinds of

20  evidence, including the factors below, that the adjudicator must consider in
addition to the objective medical evidence when assessing the credibility of an

21  individual's statements:

22     1.     The individual's daily activities;
   2.     The location, duration, frequency, and intensity of the individual's pain or

23            other symptoms;
   3.     Factors that precipitate and aggravate the symptoms;

24     4.     The type, dosage, effectiveness, and side effects of any medication the
          individual takes or has taken to alleviate pain or other symptoms;

25     5.     Treatment, other than medication, the individual receives or has received
          for relief of pain or other symptoms;

26     6.     Any measures other than treatment the individual uses or has used to

1    Thus, the questions this court must consider are:  Did plaintiff present objective medical

2    evidence of underlying impairments?  Could plaintiff's alleged symptoms reasonably result from

3    those impairments?  And, since there was no evidence of malingering, were the ALJ's reasons

4    for discrediting plaintiff's subjective complaints specific, clear and convincing?

5    The objective medical evidence of plaintiff's impairments include the CT scan

6    demonstrating cervical stenosis, degenerative disc disease, neural foraminal narrowing and

7    posterior spondylitic spurring and ridging.  These impairments are logically consistent with

8    reduced grip and give away strength in plaintiff's upper extremities, as are her complaints of

9    pain in her shoulders, elbows, hands and wrists.  Dr. Budhram's clinical findings of lumbar

10   spasm, stiff rotation and decreased lordosis are consistent with plaintiff's complaints of thoracic

11   and lower back pain and spasms, and reduced ability to sit, stand and walk.  Plaintiff's gout is

12   reasonably associated with her complaints of pain in her ankles and feet.  Further, plaintiff's

13   complaints of mental impairment are generally supported by the uncontradicted observations of

14   the consultative psychiatrist that "[d]espite being on two psychotropic medications, [plaintiff]

15   continues to have a fair number of depression and anxiety symptoms, which – especially in

16   combination with her physical pain, fatigue, and associated problems – would likely have at least

17   some negative impact upon her ability to obtain or maintain gainful employment at this time,"

18   and that "as long as she continues to experience significant pain and associated physical

19   problems, a robust improvement would not be expected."  AR 186.

20   Despite finding that plaintiff has the severe impairments of "spinal stenosis and

21   depression," AR 16, the ALJ discredited plaintiff's subjective complaints for the following

22   reasons:  the "records do not contain any serious objective clinical findings" to support

23   plaintiff's complaints of back pain; examination of the cervical spine was normal without

24

25   relieve pain or other symptoms (e.g., lying flat on his or her back, standing
     for 15 to 20 minutes every hour, or sleeping on a board); and

26   7.    Any other factors concerning the individual's functional limitations and
           restrictions due to pain or other symptoms.

17

neurological findings; plaintiff's treatment "has been essentially routine and/or conservative," rather than "regular, ongoing specialized;" examinations revealed no "muscle wasting or atrophy, usually associated with pain and inactivity" (noting that "[c]learly, one would assume that if the claimant's report of her limitations were credible, then after more than four years of inactivity, there would [be] some evidence of atrophy of the arms or legs"); plaintiff does not "participate[] in any alternative type of treatment for her symptoms, and no examining physician has referred [her] for additional testing or hospitalization for further investigation of her complaints;" plaintiff "has not reported that her medication is ineffective or that it cause[s] any side effects to any examining source;" plaintiff is "independent in her activities of daily living;" and "the record is devoid of any mental status or psychological testing which reflects any serious objective findings." AR 13-15. The ALJ relied on these findings to conclude that plaintiff has no significant nonexertional limitations, thus relying on an application of the grids.

Examination of the record as a whole demonstrates that there is little or no support for many of these findings. It cannot be said that plaintiff's pain symptoms are so di minimis as to be effectively ignored by application of the grids. Even Dr. Wirganowicz diagnosed "chronic joint pain," AR 270, and Dr. Roux found credible plaintiff's symptoms of physical discomfort during her mental status exam, AR 183. Nor does the record support the ALJ's finding that no examining source has identified side effects to medication (*cf.,* Dr. Budhram's finding that plaintiff's medications result in "decreased concentration, drowsiness, fatigue," AR 224). The ALJ ignored plaintiff's testimony that she also utilizes alternative treatments, including hot patches on her neck and daily use of a TENS unit. AR 295. Further, the ALJ's finding that "the record is devoid of any mental status or psychological testing which reflects any serious objective [mental impairment] findings," AR 15, fails to acknowledge the findings of Dr. Roux that plaintiff "continues to have a fair number of depression and anxiety symptoms" despite psychotropic medication, AR 186, as well as the ALJ's own finding that plaintiff's depression qualifies as a severe impairment, AR 16. Even the medical expert, Dr. Walters, testified at the

1   hearing that plaintiff has moderate limitations in maintaining attention and concentration due to

2   depressive symptoms, responding to work pressures in a usual work setting, and understanding

3   and carrying out complex instructions, AR 312, opining that he would recommend against

4   "assembly like activities," and "heavy assembly type of work," AR 312, 313.  While these

5   factors do not render plaintiff disabled within the meaning of the Act, they do demonstrate that

6   the ALJ's credibility assessment was overly selective and skewed.  The record as a whole simply

7   fails to support the ALJ's functional capacity assessment.  He is required to give due weight to

8   and properly consider and evaluate plaintiff's supported subjective complaints and arrive at an

9   individual residual functional capacity assessment rather than concluding that she has the

10  capacity to perform the full range of medium work.

11          Thus, the court also finds meritorious plaintiff's last contention that the ALJ erred in

12  relying on the grids rather than obtaining the testimony of a vocational expert to determine

13  whether plaintiff can perform work that exists in significant numbers in the national economy.

14  *See* 20 C.F.R. § 416.966(e).  "If a claimant does not have the residual functional capacity to

15  perform past relevant work [here the ALJ found that plaintiff has no past relevant work], then it

16  is the Commissioner's burden at step five to establish that the claimant can perform other work.

17  The ALJ may use a vocational expert . . . to determine whether a claimant can use his or her

18  work skills in other work.  Hypothetical questions asked of the vocational expert must set out all

19  of the claimant's impairments."  *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (citations and

20  internal quotations omitted).

21          Upon remand, the administrative law judge shall explicitly and fully consider the opinion

22  of plaintiff's treating physician, Dr. Budhram, in addition to the other evidence of record; if the

23  ALJ again rejects some of Dr. Budhram's findings, he shall provide specific and legitimate

24  reasons supported by substantial evidence; the ALJ shall credit plaintiff's subjective complaints

25  to the extent they are well supported by Dr. Budhram's treatment notes and residual functional

26  capacity assessment, as well as in the opinions of the consulting physicians; plaintiff's subjective

complaints may be rejected based only upon clear and convincing reasons supported by substantial evidence in the record; and the ALJ shall obtain the testimony of a vocational expert, rather than apply the Medical-Vocational Guidelines, to determine whether plaintiff can perform substantial gainful activity.

VII.  CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment is granted;

2.  The Commissioner's cross-motion for summary judgment is denied;

3.  This case is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings and findings consistent with this order; and,

4. The Clerk is directed to enter judgment for plaintiff.

SO ORDERED.

DATED:  March 29, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE